Good morning, Your Honors. May it please the Court, John McConaghy for Appellant Andrea Wirum, the Chapter 7 Trustee of Stuart Worum. I gather, Counsel, that you like Enri Acosta-Rivera. Of course I do. And there are three points I'd like to make today to convince this Court to adopt it, reverse the District Court. Is there anything we would need to do except publish a one-paragraph decision saying we agree with Acosta-Rivera if you win? No. That's what needs to be done. And I think there's three reasons to do it. One, this is required by a text-based reading of the statute. Two, it's required by the practicalities of consumer bankruptcy practice. And three, it's important not to unduly restrict the equitable powers of bankruptcy judges and courts in general. Let's talk about the text a little. Yes. It seemed perfectly clear to me reading the statute that the purpose of it was to protect creditors against debtors who don't perform their duties in the bankruptcy situation, not to enable debtors to use bankruptcy as a trick. However, the text uses that phrase that persuaded Judge Breyer, automatic dismissal. Walk us through the text and show us how to read it. Let's see. Tell me which section to start with. We're going to start with 521I1. Which is? I1. I've got 521A1. Is that the one you're talking about? I'm talking about I1, way down at the bottom of this turgid piece of prose. Got it. Lovely. Well, well drafted, wasn't it? Okay. I see it. So it uses this formidable language that says shall automatically dismiss the case unless the debtor requires or provides the information required by Section A1. So we go back to A1. And A1 says in A1A that the debtor has to provide a creditor's matrix. That was done in this case. And then A1B says unless the court orders otherwise, they've got to, the debtor's got to do all this other stuff. So. And that's what Acosta went off on. That's what Acosta went off on. And, you know, in response to Judge Kleinfeld's comments, it is called the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Abuse protection, prevention, I mean, it's common knowledge that it was a creditor-oriented statute and it was not intended to allow debtors to play fast and loose. Well, in this same statute, counsel, didn't the Congress move the priority of spouses from seventh to first even ahead of that administrative cost? Yes. And in this particular case, as opposed to Acosta Rivera, that, in this case, that strong congressional policy consideration would be frustrated by allowing this dismissal. Yeah, it would completely frustrate the whole thing, yes. The second thing I want to talk about, and this is an area where, you know, as a small-town lawyer, I think I can add some insight to the court. What is it like in the trenches in consumer bankruptcy practice? And, you know, I've represented over 600 debtors in consumer bankruptcy cases. The vast majority of them are honest. They're scared. There are some dishonest people that are trying to hide assets. And most of them come into court because they're being chased by somebody. Now, with electronic filing, somebody files a bankruptcy case and instantaneously they get a notice of bankruptcy case that they can turn around and give to the sheriff, a trustee sale officer, a creditor on the phone that immediately stops them from any kind of collection activity. And our collection activities and the means to collect money date from the 12th century. You've got to have a sheriff go and serve a writ and all this stuff. So the debtors immediately get relief. In about 30 days, they have this first meeting of creditors, and that's really the first point in time where the debtor knows, okay, am I going to have a problem with this case? Is there going to be an angry creditor that shows up, and is there going to be an ex-wife or an ex-partner that tells the bankruptcy trustee where I'm hiding assets? Is the trustee going to pick up on some squirrely thing I did with my claim of exemptions? Are they going to say that I undervalued my house? And in the meantime, though, they've had this 30 days at least to protection from creditor activity. During that 30 days, the collection activity has been shut off. Some credit card companies and other institutional creditors and collection agencies have actually just written the thing off, not waiting to find the disposition of the case. And the debtor has got this wonderful time to test the dishonest debtor. He's got a wonderful time to test the waters. They can hold back, and if all of a sudden 30 days in, or in Mr. Warren's case, six months in, they find out, bankruptcy is not a panacea for me because I'm trying to use it to manipulate the system, then under the district court's ruling, they can file one of these motions to dismiss. In fact, that's just what this case is about. That is just what this case is about. The debtor uses bankruptcy to prevent collection. His assets get discovered, unfortunately for him. And then he tries to thwart his creditors from getting his assets. Absolutely. And particularly his ex-wife. Particularly his ex-wife. That's exactly what happened here. And, you know, bankruptcy is a – it encompasses the entire realm of human folly. And it is very difficult to legislate something that deals with every single permutation and every single little exception. And that's why it's very important, in my view, to preserve the equitable power of the bankruptcy judges to deal with things like estoppel, waiver, the fact that no person should be able to take advantage of their own wrong. Now, getting back to the textual argument, the weakness of it, I suppose, is it says the case shall be automatically dismissed. And we say, well, that's not jurisdictional because the bankruptcy court could give the debtor relief, even though he didn't file on time, all his statements that he's supposed to file. But we're really not looking for the bankruptcy court to give the debtor a break. We're looking at him to give the creditors a break when the debtor didn't file his schedules. Now, your point is perfectly persuasive, that it would be absurd to suppose that Congress wanted to give a debtor the right to manipulate the bankruptcy so he could prevent collection but then keep his assets out of the hands of creditors once they found out about him. But I'm still having trouble with the text. Well, there's a case out of the ‑‑ it's a bankruptcy-level case, a published bankruptcy court decision, Inree Spencer, out of the District of Columbia, which is cited in the Acosta Rivera case. I don't have the site handy. But it talks about this statement shall automatically, and it discusses that, in fact, there can't be ‑‑ there really isn't anything automatic about it. When you file the bankruptcy case, there's an automatic stay. But there can't be an automatic dismissal because that requires a judicial act. We don't want a situation, as is allowed in Utah now, where the clerk apparently will, on its own motion, say, okay, in my opinion, you haven't filed these papers so your case is automatically dismissed. It's got to go in front of a judge. And the fact that it is going in front of the judge should allow for some moderate degree of judicial discretion. And in this case, hey, I'm not going to allow this guy to use this to cheat the system. That seems more like a may than a shall automatically. There's no question, Your Honor, that this is formidable language. I'm wondering whether the statute could be read to mean, yeah, the debtor can play that trick in bankruptcy court, and then they just hash it out in state court. Honestly, you know, people talk about congressional intent. I don't think anybody who was drafted this language. I think that's a compositional fallacy. There's no question that the people that wrote the law meant to do just what you say, prevent bankruptcy abuse. But Congress has 435 members. That's right. And somebody could have slipped in something to provide for just this and then kept his mouth shut when the law passed with his language in it.  Well, you know, it's funny. We lawyers all learn about the fallacy of trying to predict what's in the mind of another, but we do it all the time in appellate arguments. But in any event, my answer to you, Your Honor, is that it's shall automatically, but it still has to be read consistently with A-1 that says that shall automatically when they don't file the creditor matrix, but which part of A-1? The A-1 is kind of long. A-I, really the start of A-1. A-I says shall automatically be dismissed if you don't comply with A-1. And then you go to A-1, and A-1-A says you must file. Wait, A-1-A says file a list of creditors. A-1-A says file a list of creditors, and then A-1-B says file this other stuff, quote, unless the court orders otherwise. So you can still play the trick, even giving force to unless the court orders otherwise is meaning it's not really automatic. A debtor could still play the trick by not filing a list of creditors. Right. And I think if Mr. Warren had done that, I'd be stuck. You'd be stuck if your interpretation is the way to deal with the language. Right. At the very least, it creates an ambiguity. Right. And if there's an ambiguity, then we get to construe it. That's right. And there are no originalist concepts that we can fall back on here, right? Certainly not. I guess we didn't have a bankruptcy. What did James Madison think about this? I think James Madison would say, well, I left it to Congress later on to come up with a bankruptcy act, and they didn't do it until 1800. There you go. I'll reserve the rest of my time for rebuttal. Thank you, counsel. May it please the Court. David Chandler, Santa Rosa, California, for Mr. Warren. You've got a law that says one thing and common sense that says another. Well, I do, Your Honor. First of all, I'd like to point out that I did not represent Mr. Warren except in the dismissal of the case. So in filing the case, he was on his own. Is he an attorney? No. You're not, okay. He doesn't mean he's not a very clever fellow. I think there's other parts to Mr. Warren's life that would indicate that he's not a very clever fellow. What do you have in mind? I think that Mr. Warren may be a drug user, a drug addict. I don't know. I really don't. Do we know, incidentally, where he got the 93 grand? I believe he sold a house, but I'm not positive of that. Counsel, can you give us any, you seem like a learned and able advocate, but can you give us any legally logical reason why we should construe this statute in the way that your client would want? Well, Your Honor, it's not a matter of construing the statute. It says what it says. But, again, as we just discussed with your opposing counsel, it's A-1. Let me just get the exact statute. It's A-1 capital B. Yeah, A-1 capital B. It is prefaced by unless the court orders otherwise. So under the circumstances, the automatic dismissal clearly relates back to a concept that you've got to file the schedule of assets, I'm sorry, list of creditors, and unless the court orders otherwise, then you have these other things. Now, if the court orders otherwise, then let me just take the time back. Let's assume that on the 30th day, the court said you don't need to file anything else in this case. Would there be any question in your mind that the automatic dismissal would not occur?  If the court didn't order otherwise by the 45th day, is it your position that because the court didn't order otherwise by that date, then it automatically gets dismissed? It would actually be dismissed on the 46th day according to the statute. The statute says it's automatically dismissed on the 46th day unless three things occur. And the court found that one of those things occurred. The trustee made a motion. They construed something the trustee filed as a motion. But the other things did not occur. The debtor made no attempt to file what he was supposed to file, and the ---- But the court could have ordered otherwise. But they didn't. The case was dismissed. The case was gone. Yeah, and I guess what I'm struggling with, I'd be the first to admit that this is very poorly drafted. But the reality is, as you've just candidly admitted, had the court ordered otherwise on the 44th day, there would be no question that this would not be an automatic dismissal. I think that's correct. So we're really stuck with a situation of a very, very poorly drafted statute that is internally inconsistent. As I mentioned before, you've got the spousal obligations being moved from seventh priority up to first priority. If your client is successful, wouldn't every scumbag obligor in this situation say, boy, have you heard about this case? Let's just get right there. Let's do it. I mean, we're just going to get out from under our obligation. I think there's a lot of statutes like that. Where's the requirement of the trustee's motion? Where's the requirement of the trustee's motion? I'm trying to put it all together. That is 521-i-4. The case is not automatically dismissed if the trustee filed a motion, the court finds the debtor attempted, and the best sense of the creditors would be served. And there was no indication that the debtor made any attempt in good faith, and there was no finding of that. Now ---- Did the trustee make a motion? No. What the trustee ---- the trustee filed a statement that they ---- it didn't want the case dismissed because it thought it had an asset. Is that ---- And the court ---- Should that be construed as a trustee's motion? The court did construe that as a motion, yes. Pardon? The court did construe that as a motion. Would the answer then be that, well, I guess you've still got the problem. In order to grant the trustee's motion, you've got the and in there. So the judge would have to find that the debtor attempted in good faith, which he didn't. I think this statute all in all was intended to be ---- to set a certain standard for the debtor to comply with in order to get ---- The second part, that the best interest of the creditors would be served by administration of the estate is obviously satisfied. That would be satisfied. However ---- But your position would be the trustee has to satisfy the judge that the debtor attempted in good faith to file all the information required. Yes. He didn't. And he didn't. Now, the difficulty, I think, is that we have a statute that is there that the debtors ---- to deal with the debtors Mr. McConnegie is talking about that would make them comply or they get out on the 46th day. Now, if we were to adopt the logic in the First Circuit adopted in Acosta, the problem with that is Acosta court said we could go three years down the road and we could enter an order of non-pro tonque and bring this guy back in before the court. What's the matter with that? Well, if there ---- I mean, if you discover that somebody's been hiding his assets for three years, why not drag him back in, grab the assets and give them to the creditors? Well, if the case hadn't been dismissed. But the way the statute works is that the case is automatically dismissed. It doesn't even provide that an order gets entered. That's the ---- Well, counsel, let's just assume for a moment, which is somewhat like this case, let's assume that this debtor had a whole room filled with bullion and Federal Reserve notes. I won't tell you which is worth more. And it's just a billion dollars. And on the 49th day, the trustee comes in and says, we've discovered this room filled with bullion and Federal Reserve notes worth a billion dollars. You're saying that under the bankruptcy code, that the bankruptcy judge would not have an ability, nunk-pro-tunk, to basically bring the case back before the court based upon a fraud and not treat it as dismissed? You're just saying that it's dismissed. It's dismissed. It's just gone. There's nothing you can do about it. The Supreme Court told us in the Ron Perry decision to look at the words of the statute. The word automatically in the 46th day means something. Well, it does, but you have to construe it if it's ambiguous. And I think you agreed that when the court's order can change things, if there's an ambiguity, then we have to construe it in a way that makes sense, don't we? I don't think that's ambiguous. I think the court can, under 521.4, the court can order otherwise right there. I think that's got to be complied with and the court can order otherwise. Can I direct you back to my earlier question, the bullion and Federal Reserve notes question? On the 47th day, notwithstanding this statute, would the bankruptcy court have the ability to bring this case back before it? Under the facts of this case, no. No, under the facts I just gave you. Did the debtor file the payment in ISIS? Let's say that it filed the list of creditors and that's it. No. Okay. So no matter how bad the fraud, it doesn't matter. I don't think the statute addresses that. Well, I'm asking you. I'm saying, I'm stipulating for purposes of our discussion, that the fraud is just massive, complete fraud. You're saying that this statute means the case is dismissed in bankruptcy, there's absolutely nothing that can be done. That's what it means. I didn't write it. No, I know you didn't write it. I'm just arguing it. I understand that. And you're doing a fine job. But we as a court are charged with construing statutes in a way that doesn't defy logic. And what I'm hearing you tell me, to me, defies logic. If you have a massive fraud and you have a factual situation where the list of creditors has been and assets has been supplied, but nothing else, that on the 46th day it's dismissed. If you discover a massive fraud, there's nothing you can do about it. Or the fact that the priority moving spousal obligations from 7th to 1st would be completely frustrated. Well, I don't think either one of those things is necessarily true. We have a state court. It's arguendo here. I'm just trying to get you to reason with me in terms of how we construe a statute like this. But it says automatic. That word has a meaning. And that word means that it happens without any other act. Now, this argument that they make in the Spencer case isn't exactly correct because on the 46th day it's dismissed. If somebody wants an order, they have to submit it. Any party in interest can then submit an order. It's dismissed without an order even. Do you need the judge to do anything? I wonder whether a bankruptcy judge could avoid some needless work under this statute by just telling the clerk of the bankruptcy court to have a procedure for dismissing automatically. If the schedules aren't filed, then no leave was granted. Can they do that under this statute? I would suppose that they could. But the statute says that any party in interest, it's 521.0I2, says that the court shall enter an order not later than five days after a request is made by a party in interest. Well, in this case, there's a party in interest that made a request for the order. And so the court need not do anything else, not even enter the order. It's contemplated that the case is dismissed on the 46th day. Now, every statute doesn't gather up every problem that could exist under that statute. And I think that's what we're trying to do here. We're looking for a result and trying to construe the plain meaning of the words of the statute to deal with a particular result that we found in two cases that we didn't like. Well, I think at least what this Court's trying to do is to make sense of a very badly drafted statute where you've got one part of the statute that does not agree with the other and where it defies common sense to do what you're suggesting we do. I don't think that the law does require us to come to an absurd result if even the slightest probing of this doesn't make any sense. Well, I would disagree with the Court. I don't think the results have served. The parties are back to where they started in the State court and under remedies that exist under State law. And that happens many times in bankruptcy cases. Is there any broad power that the bankruptcy judge has to prevent abuse of the bankruptcy process or broad in the bankruptcy process? Any broad power that might supersede the specific statutory command? I know the Supreme Court talked about something relating to that in Marama v. Citizens Bank. In bankruptcy, whenever you question bankruptcy lawyers and judges about what goes on there, they say, well, it's equitable. Well, isn't that what we often say in this business when we don't know the exact answer? Well, it is an answer, though. If there is a very broad power to prevent fraud and abuse in an equitable proceeding, then it may function as kind of an all bets are off with respect to the statutory language. And I'm wondering what the cases say about that. I know there is a section of bankruptcy code that provides fairly broad powers to the bankruptcy judge. I believe that's Section 108. However, I would submit that the words of 521 little i are clear that the case is dismissed on the 46th day. And the real question for the court is whether the bankruptcy court can reach back and make an order non pro ton. And I don't think that's what the statute contemplated, and that's not what I submit that Congress's intent was. Congress's intent was to provide for a reduction in the filing of bankruptcies, to make it harder for people to file bankruptcy, or making it harder for people to obtain discharges of consumer debt. And that is exactly what this statute does. It makes the debtor jump through certain hoops. If the debtor doesn't do it, the case is automatically dismissed. Without any further action. Interesting case. Thank you, counsel. Yes, I want to raise, talk about two statutes quickly on rebuttal. The first, in answer to Judge Klinefield's question, the statute in question is Bankruptcy Code Section 105A, which basically says, well, it's very brief, it says, the court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title, including things appropriate to enforce or implement court orders or rules or to prevent an abuse of process. Okay. Now, that, how would you square that, though, with the language about the automatic dismissal? As your opposing counsel makes clear, of course, this automatic means something. Automatic means something. And can the bankruptcy court under 105A, using its equitable powers, directly defy the word of the statute? No. And I think there's case authority that says that you can't use the broad powers of 105A if there is something specifically on point. So, for example, I don't think you could use 105A if the guy didn't file the creditor matrix. But when they amended the code in 2005, they didn't limit 105A in a way that dealt with other issues of 529. So I gather you're conceding that the court's equitable general powers will not solve this problem. We're back to the construction of the language that we've been chatting about. Yes. The other thing I'd like to raise quickly is this 521I4, which is this motion that a bankruptcy trustee can make to stop the dismissal. And conceivably, we can't comprehend that in this case, because that statute requires a showing of debtor good faith. And there is none here. Right. And my answer to that is that that statute, as was held in Acosta Rivera, deals with the trustee trying to stop a dismissal instituted by a creditor. Right. But when a debtor's doing it, we can go with the analysis I've urged the court to follow here. Thank you. Thank you, counsel. Thank you. Interesting case, gentlemen. Thank you very much. Warren v. Warren is submitted, and we'll adjourn for the morning.
judges: Nelson T. G., Kleinfeld, Smith M.